**Martin Luther ADAMS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 364–84.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 5, 1986.

Eric G. Brown, Corpus Christi, for appellant.

Mike Westergren, Co. Atty., and Barry D. Brown, Asst. Co. Atty., Corpus Christi, Robert Huttash, State's Atty., and Cathleen R. Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

A jury found appellant guilty of obscenity and assessed 270 days in jail and a fine of $1,800.00. The Thirteenth Court of Appeals (Corpus Christi) affirmed in a published opinion, holding that the trial court's error in overruling the motion to quash the information did not prejudice the substantial rights of appellant. *Adams v. State,*

669 S.W.2d 339 (Tex.App.1984). We granted appellant's petition for discretionary review to examine this holding.

The information charged that appellant did,

"knowing the content and character of certain material, to-wit: one (1) motion picture, the title of which is unknown to affiant, to be obscene, unlawfully and knowingly promote said obscene material by then and there exhibiting said obscene material to R. Vipond, which material depicts ultimate sexual acts, to-wit: sexual intercourse."

Invoking the United States and Texas Constitutions and Articles 27.02, 27.03, 27.08, and 27.09 of the Code of Criminal Procedure, appellant moved the trial court to set aside the information for the following reasons:

"The information herein fails to give the Defendant sufficient notice of what material the State alleges was obscene that the defendant allegedly promoted. The information alleges that the material is one motion picture the title of which is unknown and that such material depicts ultimate sexual acts, to wit: sexual intercourse. The evidence presented to the Court at the pre-trial hearing shows that members of the Corpus Christi Police Department seized two films from the Defendant on August 26, 1982. Both films or motion pictures are untitled and both films allegedly depict acts of sexual intercourse. Thus, the information fails to give the Defendant sufficient notice upon which to prepare his defense ... since the Defendant is not apprised of which motion picture the State intends to prove is obscene in this trial."

This Court has stated that the failure of a charging instrument to allege facts sufficient to give the defendant notice of precisely what he is charged with is a ground for an exception to the form under Articles 27.09(2), and 21.21(7), supra. *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974).

We have also stated that when a challenge to an accusation for failure to give adequate notice on which to prepare a defense is properly and timely asserted with adequate statement of the manner in which notice is deficient, "fundamental constitutional protections are invoked." *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977). Such a challenge "calls for examination of the criminal accusation from the perspective of the accused." *Id.* "When the defendant petitions for sufficient notice of the state's charge by motion to quash adequately setting out the manner in which notice is deficient, the presumption of innocence coupled with his right to notice requires that he be given such notice." *Id.*

Moreover, Article I, Section 10 of the Texas Constitution mandates that the notice petitioned for—information on which to prepare a defense—must come from the face of the charging instrument. *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App. 1980) (opinion on State's motion for rehearing); *Voelkel v. State*, 501 S.W.2d 313 (Tex.Cr.App.1973); *Baker v. State*, 123 Tex.Cr.R. 209, 58 S.W.2d 534 (1933); *Huntsman v. State*, 12 Tex.App. 619 (1882). It is improper to look to the record of the case in order to determine whether the allegation in the charging instrument constitutes adequate notice; the adequacy of the allegation must be tested by its own terms, "in a vacuum, so to speak." *Bonner v. State*, 640 S.W.2d 601 (Tex.Cr.App. 1982).

In the instant case, the Court of Appeals noted that the allegations in the information are more specific than needed to charge the offense of obscenity. The obscene material proscribed by V.T.C.A. Penal Code Sec. 43.23(c)(1) and defined generically by Sec. 43.21(a)(2) is described specifically in the information as "one motion picture". The information charges appellant with "promoting" (the conduct proscribed by statute) the motion picture by "exhibiting" it. The generic term "ultimate sexual acts" in the statutory definition of "obscene" is specified as "sexual intercourse". The person to whom the material was exhibited is identified by name in the information.

Appellant does not argue that these allegations standing alone are inadequate to give him notice upon which to prepare a defense. Appellant contends, rather, that because the police seized two films, and because the allegations in the information are no more descriptive of one film than the other, the information does not tell him *which* film the State alleges is obscene.

Appellant emphasizes that the defense he was hindered from preparing concerns the allegedly obscene nature of the material itself. He argues:

"It should be noted herein that in this case there is a very compelling reason why Appellant should be given notice of which film the State intended to introduce as an alleged obscene film. The allegedly obscene materials were motion pictures, material which are potentially subject to First Amendment rights of freedom of speech and press. Because of these First Amendment considerations, the definition of obscene material is defined in V.T.C.A. Penal Code Sec. 43.21. A portion of the definition of obscene material provides that the material taken as a whole, lacks serious literary, artistic, political, and scientific value. If an accused is required to defend himself against allegations that he has promoted material that is obscene, the accused must know what material the State alleges is obscene. Without this notice, any meaningful defense to the charged [sic] cannot be present."

The Court of Appeals accepted this argument and wrote:

"These factors [constituting the statutory definition of "obscene"] impose quite a burden on the State and afford the accused a variety of defensive tactics *based upon the material itself.* Without specific knowledge of the material relied upon by the State, the accused is foreclosed from utilizing the variety of defenses which relate to the specific material relied upon for prosecution. At the pre-trial hearing, appellant argued that the State could have distinguished one film from another by specifying the

booth number, or film type, or by describing the actors involved. We agree." [emphasis in original].

The Court of Appeals then correctly characterized the defect as one of form. See *American Plant Food Corp. v. State,* supra. Accordingly, that Court looked to Art. 21.19, V.A.C.C.P., which mandates that the judgment shall not be affected "by reason of any defect of form which does not prejudice the substantial rights of the defendant." Following *Craven v. State,* 613 S.W.2d 488 (Tex.Cr.App.1981), the Court of Appeals reviewed the statement of facts to determine whether the defect in the information prejudiced appellant's substantial rights. That Court concluded that "under the circumstances of the present case, the defect in the charging instrument did not restrict the appellant's opportunity to defend against the prosecution."

Appellant argues that the Court of Appeals erred in reviewing the statement of facts to determine whether the defect was prejudicial. In *Jeffers v. State,* 646 S.W.2d 185 (Tex.Cr.App.1981) (opinion on State's motion for rehearing) we overruled Craven, supra, reasoning as follows:

"Craven, supra, also relied on the requirement of Art. 21.19, V.A.C.C.P., that prejudice to some substantial right of the accused be shown before an indictment is held insufficient. The constitutional right to adequate notice of the charges against him from the face of the indictment is the substantial right invoked by filing a motion to quash for insufficient notice. Brasfield v. State, [supra]. To require evidence reflected in a statement of facts to establish insufficient notice is to ignore the requirement that notice appear on the face of the indictment. Examination of the indictment, not the evidence, is the ultimate test."

The *Jeffers* opinion states that reviewing the statement of facts to assess prejudice "is to ignore the requirement that notice appear on the face of the indictment." We acknowledge that a defendant's right to "demand the nature and cause of the accusation against him" must be satisfied from

the face of the charging instrument. We may find in a given case that the State's accusation is objectionable on that ground. In such a case the requirement of notice from the charging instrument is not satisfied. Yet it appears to be a distinct question whether the particular "notice defect" prejudiced the substantial rights of the defendant. The object of the requirement of notice from the accusation is to secure the defendant's right to know "the nature and cause of the accusation against him". Article 21.19 directs us to determine whether, although the right has not been satisfied from the charging instrument, the particular defect of notice harmed the defendant.

The "substantial right" identified in *Jeffers* is constituted of two components: one, the right to demand the nature and cause of the accusation, and two, the right to have this notice from the face of the instrument. The two components are not independent, however; the right to a particular means of receiving notice owes its existence to, and is dependent on, the existence of the right to notice. The right to notice from the accusation derives from the right to demand the nature and cause of that accusation. Yet *Jeffers* defines the right to notice *from the face of the accusation* as "substantial". We do not find this proposition to be self-evident, and it begs the question of whether a particular defect of form in the charging instrument prejudiced the substantial rights of the defendant.

The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice". If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact. To the extent that the holding on State's motion for rehearing in *Jeffers*, supra, bars the further inquiry mandated by Art. 21.19, supra, the holding in *Jeffers* is overruled. The Court of Appeals in the instant case was correct to review the record for preju-

dice to appellant's substantial rights from the defect of form in the charging instrument.

The Court of Appeals found that the motion to quash should have been granted on the ground that the information failed to apprise appellant of which motion picture the State intended to prove was obscene. In analyzing the harm to appellant from the defect, the Court of Appeals reviewed both films. (Appellant introduced the second in a bill of exceptions.) The Court of Appeals wrote:

"Each film explicitly shows acts of sexual intercourse and oral sex. Except for the participants who could be identified, the films are similar in content. The entire footage of each film presents explicit sexual activity of a type barred by statute, and the films are so similar that one could not conceivably find one film obscene and the other film not.

"Appellant argues that the lack of notice prevented him from defending himself against the State's allegations that the one film shown to convict him lacked serious literary, artistic, political, or scientific value. However, we are unable to conjecture a scenario in which the substantial rights of the appellant were prejudiced. The films are so similar (in that they depict essentially the same conduct) that appellant could not possibly have defended on a theory applicable to one film but not the other."

We would only add that, in arguing his motion to set aside the information, on November 17th, the day of trial, appellant's counsel stated to the trial court the following:

"After the [pre-trial] hearing on [the motion to suppress, held on November 9th], the State permitted myself, along with [the prosecutor], to view the films that they seized on August 26th. I think [the prosecutor] will have to agree that the officers' testimony was mistaken in that both films depicted acts of oral sex and sexual intercourse, and not as the officer stated, one did not depict sexual inter-

course. His testimony was mistaken, and I will also testify as to my viewing of the film. Both of them do depict what is alleged in the information."

Appellant presented no evidence at the trial on the merits. Counsel argued to the jury that the State had failed to prove that the film was obscene in the statute's definition, in particular that the material as a whole appealed to the prurient interest in sex, or that it was patently offensive, as follows:

"But, the type of scenes depicted in that film are not the point to draw the line. It's got to appeal to the prurient interest, and that showed normal sex. We have read a lot about the studies, Masters and Johnsons, so forth. There's nothing, they say there's nothing unusual, morbid about sexual relations, even with two or more persons, oral sex."

Appellant contends that the information's failure to identify the film hindered him from preparing a defense on the basis that the material was not obscene. Appellant's counsel viewed both films before trial. Both films depicted sexual intercourse. Appellant presented no evidence on the issue of the film's obscenity. Appellant simply argued to the jury that material depicting normal sex does not appeal to the prurient interest in sex. Appellant does not explain how his ignorance of which film the State would introduce against him hindered his defense when his counsel knew the content of both films, knew that both depicted similar behavior, and still did not present a defense based on the content of the material.

We find that the Court of Appeals was correct in its conclusion that, in the circumstances of this case, the defect in the charging instrument did not prejudice the substantial rights of appellant.

1.    "Today a majority applies the holding in the panel *Jeffers* opinion on original submission to find the trial court erred in overruling appellant's motion to quash. *The rationale of the Jeffers en banc opinion on motion for*

The judgment of the Court of Appeals is affirmed.

ONION, P.J., dissents.

CLINTON, Judge, concurring.

Our Brother Teague denounces the quartet of Judges who have adhered to *Craven v. State*, 613 S.W.2d 488 (Tex.Cr.App.1981), as if we were the "Gang of Four" reincarnated.

Impaired by fervor of the moment generated in the doing, he loses sight of certain facts: the Corpus Christi Court of Appeals did make a facial examination of the information and did find that the motion to quash had merit. *Adams v. State*, 669 S.W.2d 339, 341–342 (Tex.App.—Corpus Christi 1984); the opinion of this Court in this cause iterates same rules for testing sufficiency of notice from the perspective of the accused, even citing same authorities, and approves that finding by the Corpus Christi Court of Appeals.

To that extent, at least, both opinions deserve from Judge Teague the same tribute he pays to *Jeffers v. State*, 646 S.W.2d 185 (Tex.Cr.App.1983). And from a correct reading of the concurring opinion in *Smith v. State*. 658 S.W.2d 172, 174 (Tex.Cr.App. 1983), so does the "Gang of Four." [1]

The aspect of *Craven* that upsets Judge Teague is capsuled in the following statement:

"Reviewing an adverse ruling of a trial court on a pretrial motion to quash, or an exception, on account of a claimed defect in the form of allegations in an information, this Court has been directed [by Article 21.19, V.A.C.C.P.] *not to reverse a conviction simply because the ruling is erroneous* [if the defect does not prejudice the substantial rights of the defendant]."

*rehearing is not discussed or mentioned by the majority.* Presumably it is not being implicated. Accordingly, I concur in the judgment of the Court."

*Craven,* supra, at 490.[2]  He would have the Court continue to uphold the decision on rehearing in *Jeffers,* supra, at 188–189, and thereby also reject reliance by the Corpus Christi Court of Appeals on *Craven.*  Instead, the Court overrules that part of *Jeffers* and restores the essence of *Craven.*

With its opinion today the Court makes moot my contention that the *Jeffers* majority misapprehended the gravamen of *Craven,* see note 7 and accompanying text at 190.  From my point of view, however, another matter still remains to be settled: Since both *Craven* and *Jeffers* are positioned on a plea of guilty pursuant to a plea bargain agreement that was honored, whether rationale of the former is applicable when trial is by jury.  Compare *Smith v. State,* supra, which found error in overruling a "notice" motion to quash, reversed the judgment and ordered dismissal of indictments;  but, as pointed out *ante,* the majority did not address the *Jeffers* decision on rehearing, and perforce gained votes of the "Gang of Four."

Article 21.19, supra, embraces not only defects of form in a charging instrument but also "trial, judgment or other proceedings thereon."  Since it is a progeny of the "Common Sense Indictment Act," Acts 1881, Ch. 57, p. 60, § 17, p. 63, generally designed to prevent reversals for defects in indictments, by retaining it the Legislature must have intended the same rule of review to apply to a trial by jury and a trial before a court, as well as a trial upon a plea of guilty or nolo contendere.  Though policy considerations identified in *Craven* for applying it to the latter may be more compelling, I am persuaded they also motivated the Legislature to direct the rule be applied uniformly.

Accordingly, I join the opinion of the Court.

All emphasis is mine throughout unless otherwise indicated.

**2.**  Since there was no transcription of notes of court reporter taken at pretrial proceeding or at trial and "the record before us will not shed any

TEAGUE, Judge, dissenting.

Notwithstanding the fact that the majority opinion gives lip-service to the constitutional and statutory requirements that an accused person is entitled to know from the face of the charging instrument what criminal wrong he is accused of committing, it, nevertheless, holds that in deciding whether a motion to quash the charging instrument has merit, it is no longer necessary to judge the motion solely in light of what the charging instrument states.  In order to reach this holding, it is necessary for the majority opinion to expressly overrule this Court's well-written opinion of *Jeffers v. State,* 646 S.W.2d 185 (Tex.Cr.App.1983), which is less than three years old.  To such holding and action by the majority opinion, I am compelled to file this dissenting opinion.

The record reflects that on the day in question an undercover vice officer with the Corpus Christi Police Department went to the place of business operated by Martin Luther Adams, hereinafter referred to as the appellant, and, after the officer obtained a total of sixteen quarters in exchange for four $1 bills, he then viewed two motion pictures in separate coin-operated machines, apparently inserting eight quarters in one machine and eight quarters in the other machine.

Later that day, the officer and other members of the police department returned to the place of business where they seized one motion picture from each of the two coin-operated machines in which the undercover officer had put his sixteen quarters.

Based upon the above, the appellant was charged with promoting obscenity, "knowing the content and character of certain material, to-wit:  one (1) motion picture", he exhibited the film to the undercover police officer.

Prior to trial, the appellant's attorney, on behalf of the appellant, filed a motion to

light on the ultimate issue of prejudice to substantial rights of appellant, though there be error in denying the motion to quash," the *Craven* panel overruled appellant's ground of error.

quash the charging instrument, asserting that because the appellant was not told *which movie film* he was accused of exhibiting he was entitled to more notice, i.e., the attorney wanted to know exactly *which* of the two motion pictures that had been seized by the police the State intended to rely on for conviction so that he, the attorney, could adequately prepare a possible defense to the charge. The motion to quash was denied by the trial judge. Prior to going to trial, the appellant was never told which film he was going to be prosecuted for exhibiting to the undercover vice officer. Thereafter, the appellant was tried and convicted by a jury. Of course, while being tried, but much like the jury learned, the appellant learned during the trial which of the two films he was being tried for exhibiting to the undercover vice officer.

In *Jeffers v. State*, supra, which was a well-written opinion by Judge Odom, a majority of this Court correctly overruled this Court's panel opinion of *Craven v. State*, 613 S.W.2d 488 (Tex.Cr.App.1981), which was authored by Judge Clinton, on which panel were Judges W.C. Davis and Dally. *Craven* had held that before a defendant could complain about the overruling of a motion to quash the charging instrument, he had to show harm, and "a determination of the kind of prejudice a defect of form may have engendered simply cannot be made without reviewing a statement of facts." (490).

In *Jeffers v. State*, supra, however, a majority of this Court held that "The test for deciding the sufficiency of an indictment in the face of a motion to quash for insufficient notice is to examine the indictment from the perspective of the accused ... The sufficiency of the indictment to give adequate notice must be determined in light of the presumption of innocence ... While a statement of facts may shed additional light on the basis that was urged in a motion to quash, it is not prerequisite to reaching the merits of the issue." (189). For emphasis, the majority opinion further stated: "To require evidence reflected in a statement of facts to establish insufficient

notice is to ignore the requirement that notice appear on the face of the indictment. Examination of the indictment, not the evidence, is the ultimate test. Craven v. State, supra, is overruled." (189). Those voting in favor of *Jeffers*, supra, in addition to Judge Odom, were Presiding Judge Onion, and Judges Tom Davis, Teague, and Miller. Judge Clinton filed a dissenting opinion, which was joined by Judges W.C. Davis, McCormick, and Campbell. Since that date, Judge Odom has been succeeded by Judge White. In his dissenting opinion, Judge Clinton held firm to what he had stated in *Craven v. State*, supra. Today, his side prevails. Who knows what tomorrow will bring?

What those persons who like *Craven v. State*, supra, overlook is the simple fact that a defendant in Texas does not have a general right to discover evidence in the possession of the great State of Texas, even if the evidence is the defendant's own statements. This Court in *Quinones v. State*, 592 S.W.2d 933, 940 (Tex.Cr.App. 1980), held that Art. 39.14, V.A.C.C.P., the "discovery" statute, "makes it clear that the decision on what is discoverable is committed to the discretion of the trial court." Thus, in Texas, except for very limited exceptions, an accused person, prior to trial, is entitled to receive only a piece of paper—the charging instrument—and nothing more.

In this instance, prior to trial, the trial judge permitted the appellant's counsel to view both of the movies that the police had seized. In light of the fact that even after the appellant's counsel saw the two movies he did not know on which one his client was going to be tried, I say: "Big Deal", as far as this going to the merits of the motion to quash.

I write this opinion to pay tribute to what this Court's majority stated and held in *Jeffers v. State*, supra, which the aggressive and assertive majority of this Court says has been on the books too long (less than three years) and should now be sent to Davey Jones' locker where this Court

discards some of its better opinions, regardless of whether they are "toddlers" or "senior citizens."

In light of our present law, as to what information an accused person is entitled to receive prior to trial, I find that the holdings in *Jeffers v. State*, supra, have served the administration of criminal justice well.

Cases which have followed *Jeffers v. State*, supra, are the following: *Miller v. State*, 647 S.W.2d 266 (Tex.Cr.App.1983) (Held, the indictment failed to specify the manner and means by which the defendant damaged and destroyed property. "Appellant's motion to quash entitled him to the allegation of facts sufficient to bar a subsequent prosecution for the same offense and sufficient to give him precise notice of the offense with which he was charged. We conclude that the trial court erred in overruling appellant's motion to quash."); *Barnhart v. State*, 648 S.W.2d 696 (Tex.Cr.App.1983) (Held, unless a fact is essential to give the accused notice of what he is accused of committing, charging instrument need not plead the evidence that State will rely upon to prove its case. Word "sodomy" need not be more specifically pled.); *Inman v. State*, 650 S.W.2d 417 Tex.Cr.App.1983) (Held, need not more particularly describe the word automobile); *Smith v. State*, 658 S.W.2d 172 (Tex.Cr.App.1983) (Identical contention as in *Jeffers v. State*, supra. Note, however, that Judge Clinton filed a concurring opinion in which he continued to subscribe to *Craven*, supra, and in which his staunch followers, Judges W.C. Davis, McCormick, and Campbell joined); *Doyle v. State*, 661 S.W.2d 726 (Tex.Cr.App.1984) (Held, indictment charging retaliation that did not state the nature of the threat made and the name of the public servant threatened subject to motion to quash); *(Jones v. State*, 672 S.W.2d 798 (Tex.Cr.App.1984) (Motion to quash, to be sufficient, must be specific); *Castillo v. State*, 689 S.W.2d 443 (Tex.Cr.App.1985) (Arson indictment subject to motion to quash on the ground that it did not allege the manner in which the defendant did "start a fire"); *Nethery v. State*, 692

S.W.2d 686 (Tex.Cr.App.1985) (Term "peace officer" need not be defined).

Under *Jeffers v. State*, supra, the rule was quite simple: If the motion to quash challenges the charging instrument on the ground that it does not provide sufficient notice, which implicates fundamental constitutional protections of adequate notice and due process, see *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977), the charging instrument must be examined from the perspective of the accused. "It is not sufficient to say that the accused knew with what offense he was charged; rather, we must inquire as to whether the face of the indictment sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense. *Moore v. State*, 532 S.W.2d 333 (Tex.Cr.App.1976)." *Haecker v. State*, 571 S.W.2d 920, 921 (Tex.Cr.App.1978). If the language of the involved criminal statute is itself completely descriptive of the offense, the charging instrument is sufficient if it follows or tracks the statutory language. However, if the language of the statute is not completely descriptive, then merely tracking the statutory language is insufficient, and in that instance the charging instrument is subject to a motion to quash. Of course, in making the decision, it is necessary to judge each motion to quash, in light of what the charging instrument states, on its own merits. Occasionally, it may even be necessary to ascertain what the obvious intent of the Legislature was when it enacted the particular criminal statute.

Today's decision changes all of the above.

In place of the above, the majority substitutes the following test to answer the following question: Whether a defendant had notice adequate to prepare his defense? The majority opinion advises us that the first step in answering this question, but only the first step, is to decide whether the charging instrument failed to convey some requisite item of "notice". The majority opinion advises us that the next step is to decide whether, in the con-

text of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.

The majority opinion holds: "Appellant does not [now] explain how his ignorance of which film the state would introduce against him hindered his defense when his counsel knew the content of both films, knew that both depicted similar behavior, and still did not present a defense based on the content of the material, the error in not granting the appellant's motion to quash was harmless." Such reasoning clearly represents the kind that has an affectation for putting the cart before the horse, and then saying: "See, the cart is really before the horse", but the complaint way back was "But, the cart should not be before the horse, the horse should be before the cart."

I find that the test that the majority opinion uses in this cause is substantively the same test that was used in *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984). However, is this the same test as the reasonable possibility test that is found in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)?

Given the peculiar facts and circumstances of this case, I agree that it would be difficult, if not impossible, to say that the appellant was harmed by the trial judge's error in not granting his attorney's motion to quash. But, what about the not so peculiar and unusual case? The case where there is no discovery? The case where the trial has lasted several weeks after which the evidence is closed and the defendant's attorney then jumps up and reurges his motion to quash? Must the trial judge then conduct a mental retrospective hearing on the motion to quash? What if he doesn't? Is the trial judge now required to enter findings of fact and conclusions of law on this issue? What if he doesn't? When will the members of the bench and bar now know that error in refusing a motion to quash constitutes reversible error? Perhaps in the future, we

will learn, much like Lot's wife did, at the moment when the event occurs.

I respectfully dissent to the majority of this Court turning the law on its head.